# CASES

# SUPREME JUDICIAL COURT,

## COUNTY OF PENOBSCOT,

ARGUED JUNE TERM, 1848.

---

EPHRAIM SEVERANCE *versus* WILLIAM C. HAMMATT, *Ex'r.*

All claims against an insolvent estate, except claims entitled to a preference, should be presented to and adjusted by the commissioners of insolvency, when no suit had been commenced upon them during the life of the debtor, and when the estate had been represented to be insolvent within one year after administration had been granted. An action, therefore, so commenced within one year, not founded on a demand entitled to a preference, and not otherwise authorized by Rev. Stat. c. 109, § 28, cannot be sustained.

Any person entitled to a lien upon a house, building or land, under the provisions of Rev. Stat. c. 125, § 37, is not entitled to a preference over the general creditors, when the debtor has deceased and his estate has been rendered insolvent within one year from the time of granting administration.

THIS case came before the Court, on the following statement by the parties.

" Penobscot ss. — District Court, May Term, 1848.

" Ephraim Severance *v.* Wm. C. Hammatt, Ex'r.

" This action was assumpsit on an account annexed to the plaintiff's writ, in which plaintiff claimed pay for work and labor, stated as follows : —

Severance *v.* Hammatt.

"William C. Hammatt, Executor of William Hammatt, to Ephraim Severance.                                          Dr.

"To work and labor on Wm. Hammatt's house or block of houses, on Exchange Street, Bangor, to wit: —

| | | | | |
|---|---|---|---|---|
| May 13th, 1846, | 4 days work at | 9s. | | $ 6,00 |
| June 2d, | " 22 | " | " | 33,00 |
| July 1, | " 25½ | " | " | 38,25 |
| August 1, | " 24 | " | " | 36,00 |
| September 1 " | 3½ | " | " | 5,25 |

$118,50

"The declaration contained two counts, as follows: — "for that said Wm. Hammatt, on the 4th day of September last, being indebted to the plaintiff in the sum of one hundred eighteen $\frac{50}{100}$ dollars for labor on his block on Exchange Street in Bangor, according to the account annexed, then and there in consideration thereof, promised the plaintiff, to pay him the same sum on demand. Yet the said Wm. Hammatt, never paid the same, nor has his executor since his decease.

"The second count was:—" Also for that said William being at the time of his decease in September, 1846, indebted to the plaintiff in the sum of $118,50, for work and labor done on his house or block of houses on Exchange Street, according to the account annexed, in consideration of said indebtedness the said William C. his executor, at said Bangor, on the 25th day of March, 1846, promised plaintiff to pay him the same sum on demand. Writ was dated, Nov. 25, 1846.

"On the back of the writ was the following: —

"Mr. Officer, attach all the real estate of the deceased, particularly his right of redemption of the lot on Exchange street mortgaged to H. P. Mitchell, by deed recorded in Penobscot registry, vol. 159, p. 454, on which he built a block of houses on which plaintiff worked as charged in the writ."

"The attachment compared with the directions. Writ and return may be referred to by either party.

"In the summer of 1846, said Wm. Hammatt, then living,

hired the plaintiff to work on a block of houses, which he was building on Exchange Street in said Bangor, at 9s. per day, at his usual business of a house carpenter and joiner. Plaintiff did perform the work as set forth in his writ, and a balance of seventy-three dollars and $\frac{17}{100}$ is now due to him for said labor, with interest from the date of the writ. Said William deceased on the 24th day of September, 1846, and William C. Hammatt was appointed executor of his will, and was qualified as such on November 24, 1846, and on the 26th day of January, 1847, he represented the estate of said William insolvent, and commissioners were appointed to receive and examine the claims against said estate. It is admitted that said estate is insolvent and will not pay more than fifty per cent. of the debts proved and allowed against it.

" Plaintiff contends, that he has a lien on the block of houses for his labor, and prosecutes this action to impose that lien. He has never presented his claim to the commissioners of insolvency. The defendant admits, that the above sum is due to plaintiff, and that he is entitled to a dividend with other creditors, but contests the lien of plaintiff upon the houses.

" On the foregoing statement, the parties agree to submit this case to the Court, and judgment is to be entered therein according to the legal rights of the parties, and disposition shall be made of the case as the Court deem legal.

" Plaintiff reserves a right to move to amend his writ in the same manner as if on trial.

" The Court are to draw all inferences from the testimony and facts admitted which a jury might legally draw from them.

" It is admitted that the deceased, William Hammatt, had an attachable interest in the premises at the time of his death.

" Prentiss & Rawson, for plaintiff.

" Kelly & McCrillis, for defendant."

*Prentiss & Rawson*, for the plaintiff.

The plaintiff worked on the house under a parol contract ; the man he worked for died within the 90 days insolvent. The

executor appointed by the will, was commissioned, gave bond, took the oath before the suit, and the suit was before the expiration of the 90 days.

Revised Statutes, chap. 125, § 37, provides that he shall have a lien on the buildings to secure the payment of his labor. It is designed for this very case. The statute contemplates this case, it anticipates insolvency and provides that the laborer on the house shall not be affected by it.

The statute requires, that the lien shall be secured by an attachment within 90 days. It was then necessary to commence the suit, and it is necessary that the Court should give us judgment and execution upon it, in order that we may levy on the property on which we have a lien.

The statute in regard to insolvent estates provides for an equal distribution, but here the design is not to distribute equally, but that the workman shall have his pay out of the house.

Section 28 provides that any action entitled to a preference may be brought, or continued ; this is one of them. Chapter 120, § 21, provides that an action not affected by insolvency may be brought within a year.

The Legislature provide for the lien and that is to be secured by attachment, and if in any case the usual form of judgment or execution requires altering, to carry into effect the law and attain the object, the Court must direct the alteration.

The plaintiff will give bond, if thought proper, with satisfactory sureties to levy the execution only on the property on which he has a lien.

The suit having been commenced before the declaration of insolvency, is rightly prosecuted to determine the amount due, and also to determine all other questions relating to the suit.

By chap. 109, § 28, if the demand is disputed the action is to go on. Here the demand is disputed still ; though the amount of the wages was agreed on the day the statement of facts was signed.

*Kelley & McCrillis,* for the defendant, contended : —

1st. That the statute contemplates only labor performed un-

der a special contract, so that the employer may know that the workman relies on his lien, as well as on the solvency and ability of the employer.

If the labor is performed without any such contract, the laborer must look to his employer only, and waives all specific claims on the building. This is the fair inference from the provision in chap. 125, § 37, that the lien shall continue in force for ninety days after the time of payment for the labor has arrived, not for ninety days after the labor is performed, or the building completed; but for ninety days after the time of payment as specified in the contract of the parties.

The language of section 37, is very different from that of sect. 35, giving a lien to ship carpenters, &c. on vessels; that section does not require a special contract, and the lien is extended to four days after the vessel is finished. Two provisions in the same act giving similar rights, would have been in the same language, if it was intended that there should be no distinction between the cases. The phraseology of section 37, is so marked that we can hardly escape the conclusion that something was meant by it; and giving a fair and reasonable construction to the language made use of, to wit, " contract with the owner," " person who had contracted," and " time when such payment becomes due," we hold that the letter and spirit both refer to a special contract, because these terms are not applicable to a case of labor performed without such contract, and where no time is specified for payment. How can the owner of the building, or a purchaser or creditor, know when that lien determines by law, if no time is set for payment. Nor is there any hardship in this construction; if the laborer is not satisfied with the liability of his employer at common law, but seeks a statute provision to aid him, he must conform to the terms and conditions imposed by the statute; then the parties will all act with a perfect understanding of the rights and position of each other, and honest purchasers will be safe in their transactions with the owner of the building. But the construction contended for by the plaintiff, leaves things vague and uncertain, giving those who are so disposed, an opportunity to practice frauds, and set traps for the unwary.

2d. If this view be correct, there is an end of the case, but if the Court do not adopt it, we then contend, that where there is no special contract, but the laborer is employed by the day, as was the case here, the time of payment is the end of each and every day. He is under no obligation to labor more than one day; then he is entitled to payment, and has a cause of action.

. Plaintiff has ninety days after his cause of action accrues, that is, after the time of payment, to enforce his statute lien.

If a man be hired by the day, we contend, that he can have no lien for labor performed more than ninety days before suit and attachment. If he would preserve his lien, he must make a special contract, and have the time of payment set by that contract. Nor can plaintiff take the ground that his labor was all in one lump, that it was one entire unbroken transaction, and that he had no cause of action till the whole work was completed, for two reasons, *first,* because he has not so made his charges, and on examining his account, it will be seen that he did not work the entire period of time for the deceased. *Secondly.* He is precluded from taking that ground because it is at fatal variance with his whole position and pretensions before the Court. He repudiates any special contract fixing times and terms of payment. It follows then of necessity, that the time of payment was the end of each series of days' labor.

We thus see that only $5,25 of plaintiff's claim is entitled to a privilege over other claims; and as he has united that with other claims he forfeits all rights by his attachment. No rule is better established than that, where plaintiff unites in one action a claim which is privileged with one which is not, he places them both on the same footing, and waives or abandons all pretensions as a privileged creditor. 12 Pick. 388; 22 Pick. 540.

3d. We say, that plaintiff cannot maintain his action because the estate is insolvent. Rev. Stat. c. 109, § 28, provides that no action shall be maintained against an insolvent estate, except for a preferred claim; plaintiff insists that his is

a preferred claim, within the meaning of the statute ; but we reply, that the Rev. Stat. c. 109, § 1, have settled and established what claims are to be preferred in cases of insolvent estates, and so far from embracing plaintiff's claim, it is expressly excluded from the list. It goes on to specify four classes which are to be preferred, not including claims like the plaintiff's, and then in the fifth class says all other claims. As plaintiff's is not in either of the four first, it is necessarily in the fifth. Suppose plaintiff had made his attachment in the lifetime of the testator, by our insolvent laws, c. 114, sections 83, 84, 85 and 86, the attachment would have been dissolved because all attachments are thereby dissolved in case of insolvency. There is no exception in favor of such claims and attachments as the plaintiff's.

The remedy provided by the statute is an attachment; and § 38, c. 125, gives the attachment the precedence of all other attachments, and this is the whole effect and scope of the statute law on the subject. We are not now discussing the question, whether plaintiff may or may not have some remedy under the equity jurisdiction of the Court. We are examining the question as to his legal rights, as an attaching creditor. He has precedence of other attachments, and can claim nothing more than that precedence, but as all attachments are dissolved in these cases without exception, we submit to the Court if this suit can be maintained without doing violence to well established legal principles, and to the positive provisions of the statute laws of the State.

Nor are the difficulties of plaintiff's position in any manner obviated by his proposal to file a bond, for statute c. 120, § 4, prescribes the form of execution, which is to run against all the estate of the deceased. The Court has no power to limit the process. If the law is defective and has made no provision for cases like the plaintiff's, his application should be to another tribunal. We hold that the great principle here involved has been settled in *Bullard* v. *Dame,* 7 Pick. 239. That was a case of manifest hardship, but the Court refused to interfere, for reasons which we hold are conclusive on the legal rights of the parties in this case.

Plaintiff pretends that he may maintain his action because he avers that his claim is contested within the meaning of c. 109, § 28. This we utterly deny. We have never contested or resisted his claim. We object solely to his manner of prosecuting that claim ; and even if we did resist it he would only have a judgment to be laid before the commissioners of insolvency, but would have no right to any process to enforce that judgment.

That it was not the intention to apply this law to insolvent estates is manifest from the fact, that no provision is made in cases where the executor is not qualified within ninety days from the death of testator, and also from the fact that no other remedy is prescribed but an attachment. No branch of the law is better understood than that concerning attachments ; and by the Revised Statutes themselves all attachments are dissolved in such cases. This enactment was made by the same body, and at the same moment of time too, as was that, the aid of which plaintiff invokes. It really seems hardly respectful to the Legislature to say, they intended to give the remedy as plaintiff insists they have, when they have in so many words declared that no action shall be maintained, &c.

In conclusion, we repeat, the only question involved is as to the rights of plaintiff, as an attaching creditor. So far as this suit is concerned he has no higher rights, and we submit whether this action can be maintained without an interpolation into the law of attachments, changing their whole character, and that based upon a supposed defect in the law, an omission to provide for such cases as the present, when it is more than doubtful whether it was ever designed to apply the remedy as is contended by the plaintiff. If the Court have any power to assist the plaintiff, it must be in some other form, and by some different process. When he claims the aid of the Court simply by virtue of his attachment, with all sincerity we say, it appears to us that the obstacles in his way are insurmountable.

*Prentiss & Rawson* in reply : —

It is said that there must be a special contract ? What is a

special contract? How is it distinguished from another contract? Is there any such distinction either in common or statute law? A contract under seal is a specialty; all contracts not under seal are by parol. The plain language of the statute is not to be controlled by an argument founded on such loose notions.

The statute says any contract, and requires no particular provisions. It gives a lien for ninety days from the time when the payment becomes due, whether it becomes due by particular agreement, or by implication of law.

But the first clause of section 37, chap. 125, gives the lien to any person who performs labor or furnishes materials, without requiring any contract; and the other provision for the case of any contract is in the disjunctive.

This provision is similar to that in section 35, which gives a lien on a vessel to those who have furnished labor and materials, without requiring any contract.

2. The statement of facts does not find that plaintiff was at work by the day; he was to work on the building, at a certain price per day, and it may be inferred, that he was to work while wanted, or until the building was finished, which was prevented by the death of the testator.

3. The Legislature have provided for the payment of the laborer by this lien; it is intended to apply to the case of insolvent estates, as it is not necessary in other cases. The old law provided a petition as the mode of enforcing the lien; the Rev. Stat. provide an attachment. The death of the contractor or owner insolvent, did not affect the lien under the old law, and certainly was not intended to under the new. The insolvent law, chap. 109, sect. 1, neither provides for this claim nor excludes it.

This is not an ordinary attachment, such as is meant in the former statutes. It is a mode of enforcing a lien, which lien is intended to exist till the labor is paid for, and is particularly designed for the case of insolvency; there is nothing in any statute dissolving this lien; only one mode of dissolving it is provided, by tendering the amount due. Chap. 125, § 39.

Section 38, provides that this attachment shall have prefer-
ence of other attachments.   Not that this attachment shall
share the fate of other attachments, or that this remedy is to be
destroyed by a general provision of the attachment law never
intended to be applied to it.

Our Rev. Stat. c. 96, § 5, expressly empower the Supreme
Court, to issue all processes and writs which may be necessary
for the furtherance of justice, and the due execution of the
laws.   Sect. 8 gives some indispensable requisites of these
writs.   Chap. 114, § 1, provides that alterations may be made
by the Court, in writs, " to adapt them to changes in the law,
or for other causes."

So this " insurmountable obstacle" vanishes — this very case
is provided for.

The opinion of the Court was drawn up by

SHEPLEY J. — The plaintiff performed labor upon houses
built by the testator, upon lands supposed to have been con-
veyed by him in mortgage.   It is admitted that he had an at-
tachable interest therein, at the time of his decease.   The
statute provides, that persons performing certain labor, " shall
have a lien to secure payment of the same, upon such house
or building, and the lot of land, on which the same stands, and
on the right of redeeming the same, when under mortgage ;
and such lien shall continue in force for the space of ninety
days from the time, when the payment becomes due."   Ch.
125, section 37.

Provision is made by the following section, for the enforce-
ment of such lien, by an attachment of the estate within the
ninety days.   Soon after the labor was performed, the testator
deceased, the defendant having assumed the trust of executor,
represented the estate to be insolvent, and commissioners of
insolvency were appointed.   It is admitted, that the estate was
in fact insolvent.

The plaintiff caused the suit to be commenced against the
executor within ninety days, after the last charge for labor per-
formed was made, to preserve and enforce the alleged lien.

No executor or administrator can be required to defend a suit, commenced against him within twelve months after he has assumed the trust, unless the same be brought for the recovery of a demand, not affected by the insolvency of the estate, or by way of appeal from a decision of the commissioners of insolvency.  Ch. 120, § 21.

Provision is made by statute c. 109, for the disposition of the whole assets of an insolvent estate.  No part of it is appropriated to the payment of claims secured by lien, while provision is made in the tenth section, for the adjustment of the rights of those, who hold collateral security by mortgage or pledge of real estate or personal property, including notes or other evidences of debt.  No provision is made by statute authorizing the recovery of a judgment against an estate, actually insolvent, which is not to be added to the list of claims, returned by the commissioners, unless the judgment be rendered upon a demand entitled to a preference.  If this action could be maintained, no judgment could be rendered against the goods and effects of the testator, in the hands of the defendant.  It could be rendered only against the right or interest which the testator had, when the lien attached, in a certain estate, which must be described in the judgment.  It would be a judgment *in rem* rendered by a court of common law, not based upon any process against the property.

And there is usually no definite description of the bounds of such estates, by the act, so that the Court could describe, in a judgment, the estate to be sold or levied upon, to satisfy the judgment.

If the plaintiff could be allowed to enforce his alleged lien by the recovery of such a judgment, and execution issued thereon, authorizing the debt to be collected only out of the estate subject to the lien, the effect would be to take so much from the assets, and prevent its application to the payment of the expenses of the funeral, or to the allowance authorized to be made to the widow and children, or to the expenses of the last sickness, or to any of the other preferred claims.

Among the considerations suited to lead to the conclusion, that it was not the intention of the Legislature to have such a lien enforced, against an insolvent estate, are the following.

The omission to provide for the maintenance of an action, and for the entry of a special judgment to enforce it. The omission to notice and to provide for it, in the section regulating the rights of mortgagees and pledgees; the appropriation of the whole estate to other purposes than the payment of such claims; the improbability that the Legislature would designedly have given to such claims a preference, over those for funeral expenses, for expenses of the last sickness, and over all other preferred claims.

It must, at least, be regarded as doubtful, whether such was the intention of the Legislature; and if such an intention could be discerned, no provision has been made to carry that intention into effect. In such case the Court would not be authorized to supply the enactments necessary, to enable one to maintain an action, and to recover a judgment only against the estate, subject to the lien.

It was the intention as disclosed by the enactments of the Legislature, that all claims against an insolvent estate, except claims entitled to a preference, should be presented to, and adjusted by the commissioners of insolvency, when no suit had been commenced upon them during the life of the debtor, and when the estate had been represented to be insolvent, within one year after administration had been granted.

This suit does not appear to be one authorized to be prosecuted by the statute, c. 109, § 28, as founded on a demand disputed, and having been commenced within one year, and not upon a claim entitled to a preference, it cannot be maintained.                    *Plaintiff nonsuit.*

The following dissenting opinion was by

Wells J. — The plaintiff by c. 125, § 37 and 38, Rev. Stat. had a lien upon the house of the defendant's testator, for work and labor performed by him.

The estate of the testator has been rendered insolvent, and a commission of insolvency has issued, and it is contended by the defendant, that the insolvency in such case puts an end to the lien.

The statute secures the benefit of such lien by an attachment of the property, upon which the labor is performed, in an action against the debtor.

The statute declares, that the person performing the labor " shall have a lien to secure the payment of the same," and " such person may secure the benefit of such lien by an attachment."

The first acts containing provisions similar to the one now in force, were passed on the 25th and 29th of March, 1837.

The law of 1821 provided for the dissolution of attachments by the death and insolvency of the debtor.

If the Legislature had intended, that the lien should cease upon the death and insolvency of the debtor, one would suppose that such provision would have been inserted in the acts passed in 1837, or in the Revised Statutes, when these several subjects underwent a revision.

The lien is created before the attachment. It is a vested interest in the property, upon which the labor is performed, and the attachment is given as a mode of perfecting such interest. The lien is created under the law by the labor and the materials. And the laborer or material man has a property in the house, upon which he has bestowed his labor, or for the repair or erection of which, he has furnished materials.

Those liens, which are dissolved by death and insolvency are created by the attachment only. Such creditors have no other priority than merely causing the property of their debtors to be attached. Their debts are not more meritorious than those of other creditors.

But the lien under consideration, is as much a vested interest in the subject, to which it is attached, as a mortgage would be.

Suppose the Legislature had provided that mortgagees of personal property should perfect their title by suit and at-

tachment, within 90 days, after the time of payment had elapsed, would a commission of insolvency defeat their claim? There would appear to be as much reason for affirming that it would, as in the present case to say that the lien is destroyed by such an event.

The death of the mortgager or pledger does not defeat the pledge, nor should it have that effect upon the lien of the plaintiff. The very object of the lien is to protect the holder of it against insolvency. The necessity of it is increased where the debtor dies insolvent. Nor is it just, that the labor and materials, which are not the property of the deceased insolvent, should be devoted to the payment of his debts generally, or to the support of his wife and children.

But it is said that no provision is made for rendering judgment against the administrators or executors of insolvent estates, in such cases. When the Legislature declares a right to exist, it confers all necessary means, by which such right can be established. The Legislature declares the lien to exist, " shall have a lien to secure the payment of the same," and has pointed out the course to be pursued to render the lien effectual. It is by an action at law, and it would necessarily follow that an appropriate judgment could be rendered in such action.

Under the late bankrupt law of the United States, liens are secured, arising from attachments, though no mode for so doing is pointed out in the law itself.

Although the bankrupt is discharged from all his debts, and is not ordinarily to be subjected to have executions against him, yet to preserve the lien, and to give effect to the provisions of the act, it is necessary that there should be a special judgment and execution, so as to enable the creditor to levy upon the property attached.

In form it is a judgment *in personam*, in substance a judgment *in rem*, binding the specific property attached. *Davenport et al.* v. *Tilton*, 10 Metc. 320. The plaintiff can have such judgment and execution as will enable him to secure the lien upon the property attached.

I cannot bring my mind to the conclusion that it was the purpose of the Legislature to annul the lien upon the death of the debtor and a commission of insolvency, nor that the law is so defective, as not to furnish a remedy to the plaintiff.